FILED
RICHARD W. NAGEL
CLERK OF COURT

AO 91 (Rev. 11/11)  Criminal Complaint

3/25/2022

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   3:22-mj-95 |
| DEMARCUS CUNIGAN | ) | |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____March 23, 2022____ in the county of ____Montgomery____ in the

____Southern____ District of ____Ohio____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) | Possession with intent to distribute a mixture or substance containing detectable amounts of methamphetamine and fentanyl, Schedule II controlled substances. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

*Frederick D. Zoll*
*Complainant's signature*

TFO Frederick D. Zollers, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____Telephone____ *(specify reliable electronic means)*

Date:  3/25/22

City and state:  ____Dayton, Ohio____

Peter B. Silvain, Jr.
**United States Magistrate Judge**

Judge

## AFFIDAVIT

I, Frederick D. Zollers, being duly sworn, does hereby depose and state as follows:

## INTRODUCTION

1. I am a sworn law enforcement officer in the State of Ohio for fifteen (15) years. I am presently a sworn member of the Montgomery County Sheriff's Office. I am currently assigned to the Federal Bureau of Investigation's (FBI) Southern Ohio Safe Streets Task Force (SOSSTF) as a Task Force Officer (TFO), I have received training in drug trafficking investigations and have participated in numerous narcotics-related investigations (ultimately leading to successful prosecution) that involved surveillance, gathering evidence of money laundering, interviewing suspected drug traffickers, and supervising the activities of informants who provided information and assistance which resulted in the seizure of narcotics, firearms, and U.S. currency. I have conducted numerous investigations into the unlawful distribution and possession of controlled substances; use and possession of firearms. Based on my training and experience, I am familiar with federal drug laws, and am aware that it is a violation of Title 21, United States Code, Sections 841(a)(1) and 846 to knowingly and intentionally distribute and possess with intent to distribute controlled substances (including heroin, fentanyl, cocaine, and methamphetamine), and conspiracy to commit the same.

## PURPOSE OF AFFIDAVIT

2. This Affidavit is submitted in support of a criminal complaint and seeks the issuance of an arrest warrant against Demarcus Lovelle Cunigan (hereinafter "**CUNIGAN**") for violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (possession with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine and possession with the intent to distribute a mixture or substance containing a detectable amount fentanyl).

3. Along with other law enforcement agents, I have participated in the investigation of **CUNIGAN**

1

in connection with the conduct detailed in this Affidavit. As part of the investigation, I have, among other things, discussed information with, and/or reviewed documentation and reports provided by, other law enforcement officers. My knowledge of the facts and circumstances set forth in this Affidavit is thus based upon my own personal observations, as well as information I have received from other law enforcement officers involved in the investigation. For purposes of this Affidavit, I have not distinguished between information of which I have direct knowledge and that of which I have indirect knowledge.

4. I have elected not to include in this Affidavit all the factual details gathered to date during the investigation, but rather I have included only certain information sufficient to establish probable cause to believe that **CUNIGAN** has committed a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

## SUMMARY OF PROBABLE CAUSE

5. Beginning in March of 2022 and continuing thereafter, Detective Sean Humphrey and members of the Regional Agencies Narcotics and Gun Enforcement (RANGE) Task Force began investigating **CUNIGAN** for distributing fentanyl and methamphetamine after receiving information that **CUNIGAN** was trafficking illegal narcotics in the Dayton, Ohio area.

6. On March 23, 2022, members of the RANGE Task Force and FBI Safe Streets Task Force conducted an operation utilizing a Confidential Informant (CI) and Undercover Officer (UC) to arrange to purchase a quantity of methamphetamine from **CUNIGAN**. Prior to arranging the drug transaction, task force members conducted surveillance at 1708 West Riverview Avenue in the City of Dayton. Task force members observed a black Dodge Charger known to be driven by **CUNIGAN** parked behind the apartment building.

2

7. After locating the Dodge Charger parked at 1708 West Riverview Avenue, the CI and UC called cellular phone number 937-286-2115 to arrange the narcotics transaction. Detective Humphrey had previously identified cellular phone number 937-286-2115 to be a cellular phone number believed to be used by **CUNIGAN** according to information obtained from a law enforcement database.

8. The CI spoke with a male and arranged to purchase a quantity of methamphetamine. The male directed the CI and UC to drive to the More For Less, located at 444 James H. McGee Boulevard. After the meet location was determined, task force members observed **CUNIGAN** exit 1708 West Riverview Avenue and depart driving the Dodge Charger. Task force members observed a known female (hereinafter identified as TH) exit the apartment building with **CUNIGAN** and depart in a silver Ford SUV. Task force members surveilled **CUNIGAN** as he drove toward the More For Less, followed by TH. **CUNIGAN** was the sole occupant driver of the Dodge Charger and he was known by investigators to have an invalid driver's license.

9. Detective Humphrey coordinated with Dayton Police Department (DPD) Officer Vincent Carter to conduct a traffic stop on **CUNIGAN** prior to him getting to the More For Less. In the area of Rosedale Avenue and James H. McGee Boulevard, Officer Carter pulled behind the Dodge Charger and initiated a traffic stop on **CUNIGAN**. **CUNIGAN** turned right onto James H. McGee Boulevard and continued to travel at a slow speed failing to immediately stop for Officer Carter. FBI Safe Streets Task Force Officer (TFO) Fred Zollers was parked in his unmarked vehicle in the entrance/exit to the More For Less at James H. McGee Boulevard, northwest of **CUNIGAN**. TFO Zollers observed that **CUNIGAN** failed to immediately stop for Officer Carter. TFO Zollers began to pull out onto James H. McGee Boulevard to get in front of **CUNIGAN**. As TFO Zollers pulled out onto James H. McGee Boulevard, **CUNIGAN** merged from the left to right lane of James H.

3

McGee Boulevard in front of the More For Less. As **CUNIGAN** merged into the right lane, TFO
Zollers observed a blue in color item thrown out of the passenger side of the Dodge Charger before
**CUNIGAN** attempted to merge back into the left lane and drive around TFO Zollers' unmarked
vehicle. Additional marked cruisers and unmarked cars were able to get **CUNIGAN** stopped near
the entrance/exit to the More For Less. After **CUNIGAN** was stopped and detained, TFO Zollers
advised task force officers that **CUNIGAN** threw a blue in color item out the passenger side of the
Dodge Charger prior to stopping. Task force members immediately located a blue rubber glove
containing a plastic baggie of a crystal like substance suspected to be methamphetamine in the
roadway. The blue glove containing the suspected methamphetamine is pictured below:



10. While **CUNIGAN** was being detained, task force members continued to surveil TH as she drove
past the traffic stop location. TH drove back toward the apartment building on Riverview Avenue.
Task force members stopped TH and spoke with her regarding the investigation involving
**CUNIGAN** and events leading up to his arrest. Detective Humphrey spoke with TH and she
identified 1708 West Riverview Avenue, Apartment C as her apartment. TH advised that
**CUNIGAN** does not reside at her apartment, however he does keep items in a room in her

4

apartment and he frequents her apartment several times a day. Prior to speaking with TH, Detective Humphrey spoke with **CUNIGAN** post-*Miranda* and **CUNIGAN** told Detective Humphrey that he did not live at 1708 West Riverview Avenue, Apartment C. **CUNIGAN** denied tossing the blue rubber glove containing suspected methamphetamine out of the Dodge Charger.

11. Detective Humphrey obtained written consent from TH allowing task force members to search 1708 West Riverview Avenue, Apartment C. While searching the apartment, TH directed task force members to an extra room where they located a digital scale with powder residue, the bottom portion of a bullet blender, and a shoebox that contained the following but not limited to items:

    a. the top portion of a bullet blender;

    b. two bottles of powder that is often used as a cutting agent for narcotics;

    c. a baggie containing approximately 5.87 grams of a white powder suspected to be fentanyl;

    d. a bag containing a small quantity of blue powder suspected to be fentanyl;

    e. a box of sandwich baggies that contained another baggie of approximately 4.2 grams of suspected fentanyl; and

    f. **CUNIGAN's** United States Pretrial Services Supervision Identification Card.

12. Based on training and experience, I know that cards like **CUNIGAN's** United States Pretrial Services Supervision Identification Card are often used to cut up and divide powders used in narcotics for packaging and distribution. Through my training and experience I believe the above items contain fentanyl. Due to the dangers or fentanyl, these items were not tested. We are awaiting laboratory testing. I know that approximately 9 grams of fentanyl, coupled with the drug processing equipment, is indicative of possessing fentanyl with the intention of distributing it. The above-described shoebox and items found

in the shoebox are pictured below:





13. Following **CUNIGAN's** arrest, Detective Humphrey listened to several recorded calls that **CUNIGAN** made while incarcerated at the Montgomery County Jail. Detective Humphrey listened to recorded calls that **CUNIGAN** made to a female believed to be TH at phone number 937-409-5254. In summary, on the first call a female believed to be TH, informed **CUNIGAN** that the police found his prison card (United States Pretrial Supervision Identification Card) in the

6

box with the stuff. **CUNIGAN** responded that he uses that shit, referring to the drugs in the box. On the fourth call that **CUNIGAN** made, he talked about the police having access to his phone number and trying to set him up. **CUNIGAN** indicated that he did not complete it, so worst case is a possession if the police can prove he threw the drugs out.

14. Detective Humphrey field tested the baggie of suspected methamphetamine and the test indicated positive for methamphetamine. The baggie of methamphetamine had an approximate field weight of 46 grams. Based on training and experience, I know that 46 grams of methamphetamine is distribution quantity. The suspected methamphetamine and suspected fentanyl will be submitted to the crime laboratory for drug analysis.

15. Based on a review of **CUNIGAN's** criminal history, I know he has prior state drug trafficking conviction for the following:

      a. Trafficking in Heroin, a felony of the third degree, in violation of Ohio Revised Code § 2925.03(A)(2). This conviction occurred in Montgomery County Common Pleas Court Case No. 2015 CR 00673.

16. Additionally, I know that **CUNIGAN** is currently on pre-trial release through the Southern District Court of Ohio for violation of felon in possession of a firearm in case number 3:21-CR-00080.

/// 

/// 

/// 

/// 

/// 

/// 

7

17. Based on the facts set forth in the Affidavit, there is probable cause to believe that, on or about March 23, 2022, in the Southern District of Ohio, **CUNIGAN** committed a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (possession with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine and possession with the intent to distribute a mixture or substance containing a detectable amount fentanyl).

Further your Affiant sayeth naught.

*Frederick D. Zoller*
_____
Frederick D. Zollers, Task Force Officer
Federal Bureau of Investigation
Southern Ohio Safe Streets Task Force

Subscribed and sworn to before me this ___25th___ day of March 25, 2022.



Peter B. Silvain, Jr.
**United States Magistrate Judge**

8